## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**TAYJHA ALFRED**                       **CIVIL DOCKET NO. 6:24-CV-00274**

**VERSUS**                              **JUDGE DAVID C. JOSEPH**

**BO DUHE, ET AL**                      **MAGISTRATE JUDGE CAROL B. WHITEHURST**

### MEMORANDUM RULING

Before the Court is the REPORT AND RECOMMENDATION ("R&R") of the Magistrate Judge previously filed herein. [Doc. 42]. The R&R makes recommendations as to the disposition of a MOTION TO DISMISS pursuant to Federal Rule of Civil Procedure 12(b)(6)[1] (the "Motion") filed by Defendants, Bo Duhe and Alister Charrier (collectively, the "DA Defendants"). [Doc. 28]. Both Alfred and the Defendants timely filed Objections, [Docs. 45 & 46, respectively], as well as responses to the Objections [Docs. 48 & 47, respectively].

After conducting an independent review of the record, and upon careful consideration of the R&R and the parties' Objections to same, Defendants' MOTION TO DISMISS [Doc. 28] is GRANTED IN PART and DENIED IN PART, as described herein.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In her Amended Complaint, Alfred alleges that in August 2019, she picked up a friend from a home in Iberia Parish, drove him to complete an errand and, when

---

[1]    Because Defendants' Motion also asserts Eleventh Amendment immunity and lack of standing, this Motion was also brought pursuant to Rule 12(b)(1).

she returned to drop her friend off, found yellow tape and flashing police lights in the area. [Doc. 6, ¶¶ 48-51]. According to Alfred, unbeknownst to her, Garon Lewis ("Lewis") had been murdered in the area while she and her friend had been on their errand. But Alfred contends that she did not witness the shooting. [*Id.*, ¶¶ 52; 54]. A few days later, police officers went to Alfred's home. Though she was not home at the time, Alfred later voluntarily went to the police department and provided two interviews, stating that she was not present at the time of the crime and had limited knowledge. [*Id.*, ¶¶ 55-65].

In the following three years, Alfred alleges that she became a certified nursing assistant (CNA) and worked as a nurse in Iberia Parish until the onset of the Covid-19 pandemic, when she began working as a traveling nurse. Thereafter, she alleges that she worked in nursing homes in various states until February of 2023. During breaks, she regularly returned to her mother's house in Iberia Parish, which she considered her home. Alfred alleges that she had planned to begin a Licensed Practical Nursing ("LPN") program in August 2023. [*Id.*, ¶¶ 66-77].

Three years after Lewis's murder, the DA's Office requested and obtained from a state district court judge a material witness warrant for Alfred's arrest in advance

of the trial of Bryson JohnLewis, a suspect in Lewis's murder.[2]  The motion for the warrant was filed by Assistant District Attorney Charrier, who filed the request on behalf of her boss, Bofill Duhe, the District Attorney for the 16th Judicial District of Louisiana.  Judge Roger P. Hamilton of the Iberia Parish district court granted the motion; a warrant was issued, and Alfred was subsequently arrested.  [Doc. 6-1].  At a 72-hour hearing, Judge Hamilton ordered that Alfred be held without bond until the DA could speak to her and notify the Court "what arrangement had been made." [Doc. 6-2].  The DA did not meet with Alfred, and she was held in custody by the state court until completion of her testimony at JohnLewis's trial, wherein JohnLewis was found guilty of second-degree murder and sentenced to life in prison.

The facts and circumstances preceding Alfred's arrest are disputed by the parties.  Alfred alleges that the DA attempted only twice to serve her with a subpoena for Bryson JohnLewis's trial and knew that she had been working out of state as a traveling nurse.  But Alfred's own arguments, and the uncontroverted allegations of the Defendants, reveal a far more nuanced picture of the circumstances.  In fact, prior

---

[2]     The Material Witness Statute provides:

> Except as provided in R.S. 15:257.1, whenever it shall appear, upon motion of the district attorney or upon motion of a defendant supported by his affidavit, that the testimony of any witness is essential to the prosecution or the defense, as the case may be, and it is shown that it may become impracticable to secure the presence of the person by subpoena, a judge, as defined in Code of Criminal Procedure Article 931, shall issue a warrant for the arrest of the witness. The witness shall be arrested and held in the parish jail, or such other suitable place as shall be designated by the court, until he gives an appearance bond as provided for defendants when admitted to bail, or until his testimony shall have been given in the cause or dispensed with.

La. R.S. § 15:257.

to Alfred's arrest, Defendants had been attempting to serve Alfred with a trial subpoena for at least four months before she was ultimately arrested.

Also clear from the record is Alfred's acknowledgment that the Defendants tried to serve her on October 6, 2022. In her Amended Complaint, Alfred contends that the service was attempted "at her mother's home in Iberia Parish," [Doc. 6, ⁋ 90], which Alfred's counsel argued was "[Alfred's] home address where she's lived since at least 2011." [Doc. 28-2, p. 6, ll. 21-25; p. 8, ll. 4-6]. Alfred does not deny that her mother did not provide the DA's Office with her out-of-state contact information. [Doc. 6-1, ¶ 3]. Alfred also does not deny that ADA Charrier met with her mother in December 2022 at the DA's Office, and that at that time, Charrier explained "what a material warrant was, [and] why [a warrant] was issued." [Doc. 28-2, p. 5, ll. 12-20]. In her Amended Complaint, Alfred also acknowledges that she "was aware that the State had come to her house" in January 2023, when "police surrounded Alfred's mother's home at 3:00 a.m. … looking for Alfred a third time." [Doc. 6, ¶ 126; Doc. 28-2, p. 8, ll. 20-23]. Finally, Alfred admits that in early February 2023, she finished working as a traveling nurse in Indiana and "had several weeks off until she was scheduled to begin her next post" and that she was in Iberia Parish for "weeks" prior to February 24, 2023, the date she ultimately was arrested outside of a grocery store. [Doc. 6, ⁋⁋ 129-132]. Thus, from this Court's examination of the entirety of the record, it is clear that Alfred: (i) knew police had been looking for her; (ii) knew the DA had

attempted to serve her with a trial subpoena on at least two occasions;[3] but (iii) did not contact law enforcement either while working out of town or upon her frequent visits to her home in New Iberia.

At the time of her arrest on February 24, 2023, the JohnLewis trial was scheduled to begin in late February or early March of that year. However, because of several continuances, the trial did not begin until September 25, 2023, and Alfred remained in the Iberia Parish jail for approximately six months until she testified on September 29, 2023. [Doc. 6, ¶ 225].[4] Alfred alleges that, in the meantime, she lost her job and her position in a nursing degree program. Alfred filed the instant lawsuit in February 2024, alleging that DA Duhe and ADA Charrier violated her due process rights under the Fourth and Fourteenth Amendments to the U.S. Constitution, and under Article I, Sections 2 and 5 of the Louisiana Constitution, for alleged "prolonged detention" and alleged "unlawful continuing seizure." She also alleges a claim for negligent infliction of emotional distress under Louisiana law.[5] Alfred seeks the following relief: (i) a declaration that the Material Witness Statute is facially unconstitutional or, alternatively, unconstitutional as applied to Alfred; (ii) an order permanently enjoining Defendants from enforcing the Material Witness Statute "as

---

[3]    In the motion for the arrest warrant, Defendants also averred that they had attempted service at 901 Graceland Ave. in Abbeville, LA, but that the service return came back indicating Alfred did not reside there. [Doc. 6-1].

[4]    Before Alfred left the courtroom, Defendants personally served her with a subpoena to testify "as a material witness in the prosecution of Travis Layne — JohnLewis's co-defendant." [Doc. 6, ¶ 231].

[5]    The claims are alleged against ADA Charrier in her individual capacity and against DA Duhe in both his individual and official capacities.

applied to Alfred" or, alternatively, for an order permanently enjoining Defendants from "incarcerating material witnesses … for an unnecessary and prolonged period of time;" and (iii) general and compensatory damages for the alleged violations of Alfred's rights under federal and state law, including damages for alleged pain and suffering, lost wages, lost earning capacity, lost educational opportunities, reputational harm, and punitive damages.

In the pending Motion, Defendants seek dismissal of Alfred's federal constitutional and state law claims on grounds they are absolutely immune from suit, and on grounds Alfred lacks standing to seek declaratory and injunctive relief from Defendants' alleged threats to re-incarcerate her until the trial of Travis Layne. The Magistrate Judge conducted oral argument on Defendants' Motion on August 23, 2024, and issued her R&R on August 28, 2024. Following the timely filing of Objections by all parties, the issues are now ripe for *de novo* review.

<u>LAW AND ANALYSIS</u>

## I.    Claims against Defendants in their Individual Capacities

The Magistrate Judge addressed Alfred's § 1983 claims against Duhe and Charrier, individually,[6] in the context of Plaintiff's allegations of two instances of prosecutorial misconduct: (i) providing falsehoods and material omissions in the motion for witness arrest warrant; and (ii) failure to comply with Judge Hamilton's February 27, 2023, Order.  [Doc. 42, p. 16].  After characterizing the Defendants'

---

[6]      The doctrine of absolute immunity does not apply to official capacity claims.  *Turner v. Houma Mun. Fire & Police Civ. Serv. Bd.*, 229 F.3d 478, 483 (5th Cir. 2000).

actions in this manner, the R&R goes on to conclude, for the reasons cited therein, that the Defendants are entitled to absolute immunity in connection with their conduct in obtaining the arrest warrant – to which Alfred objects – and that Defendants are not entitled to absolute immunity in connection with their conduct after Judge Hamilton's February 27, 2023, Order was issued – to which Defendants object. [Doc. 42, pp. 17, 21]. The Court will maintain the R&R's categorization of the Defendants' actions and analytical framework for the purpose of addressing the parties' objections.

### A.    Conduct in Obtaining the Arrest Warrant

Alfred challenges the R&R's finding that absolute prosecutorial immunity bars her individual claims against DA Duhe and ADA Charrier for their conduct related to their application for the arrest warrant. Specifically, Alfred argues that the warrant application included both a falsehood and material omissions, and that in making that falsehood and omitting material facts, Defendants acted not as advocates but rather as complaining witnesses, for which they cannot be immune under *Kalina v. Fletcher*, 522 U.S. 118, 122, 118 S. Ct. 5402 (1997).

Alfred's objection is without merit. As the Magistrate Judge correctly concluded, Defendants' actions in preparing, filing, and arguing the motion for arrest warrant clearly involved Defendants' roles as advocates for the State, to which immunity extends. *Imbler v. Pachtman*, 424 U.S. 409, 418, 96 S. Ct. 984, 989, 47 L.Ed.2d 128 (1976). *See also Doe v. Harris Cnty., Texas*, 751 F. App'x 545, 548 (5th Cir. 2018) (detaining a witness in order to compel testimony at trial is prosecutorial and any lawsuits arising out of a prosecutor's performance of this function are

barred).  Fifth Circuit precedent dictates a finding that DA Duhe and ADA Charrier are immune from claims based on their averments in the motion for the arrest warrant.  *See also Adams v. Hanson*, 656 F.3d 397, 405 (6th Cir. 2011) (applying absolute immunity to a prosecutor who allegedly provided false information in a material-witness arrest warrant); and *Simon v. City of New York*, 727 F.3d 167, 172 (2d Cir. 2013) ("[W]hen a prosecutor seeks a material witness warrant, he does so as an advocate and is immune from suit, [such that] [a]ny alleged misstatements by [the prosecutor] in his application for the material witness warrant therefore cannot form the basis for liability.").

Moreover, the primary case cited by Alfred, *Kalina v. Fletcher*, 522 U.S. 118, 122, 118 S. Ct. 502 (1997), is clearly distinguishable.  In *Kalina*, the prosecutor was acting as a witness when she made herself the affiant providing evidentiary support for the issuance of an arrest warrant, which, under Washington state law, required "sworn testimony establishing the grounds for issuing the warrant." *Id*.  Thus, in *Kalina*, the Supreme Court found that the prosecutor had violated the "tradition, as well as the ethics of our profession, [that] generally instruct counsel to avoid the risks associated with participating as both advocate and witness in the same proceeding." *Id*. at 130, 118 S. Ct. at 509.  Put simply, the holding in *Kalina* was premised on the fact that the prosecutor was not acting as an advocate, but rather as a fact witness, when she personally vouched for the truth of the facts set forth in the certification under penalty of perjury.  522 U.S. at 121.

But here, neither DA Duhe nor ADA Charrier personally attested to the truth of the facts presented in the motion requesting an arrest warrant, nor does the

Louisiana Material Witness Statute require that they do so. Nor is there any precedential support for Alfred's contention that the Defendants are not immune because they were the only source of facts for the judge's decision. Of course, had Judge Hamilton found it necessary, he could have ordered an evidentiary hearing or otherwise required evidentiary support prior to the issuance of the material witness warrant. But he did not and there is no evidence that the DA Defendants ever left their role as advocates in the process of obtaining the material witness warrant. As such, under the facts of this case, *Kalina* clearly holds that absolute immunity protects Defendants' conduct in presenting the motion for arrest warrant. 522 U.S. at 130-31 (advocatory work that is integral to the initiation of prosecution includes prosecutor's drafting of the certification; determination that the evidence was sufficiently strong to justify a probable-cause finding; decision to file charges; and presentation of the information and the motion to the court).

### B.     Conduct After the Arrest Warrant was Obtained

The R&R next found that DA Duhe and ADA Charrier are not entitled to prosecutorial immunity for their conduct after the Plaintiff was arrested, concluding that the Defendants had a "constitutional duty, independent of a court's order" to ensure that Alfred did not remain in jail for a lengthy period. Characterizing the events that transpired in this matter as "gross administrative failures," [Doc. 42, p. 18], the R&R concluded that, under *Odd v. Malone*, 538 F.3d 202 (3d Cir. 2008) and *Schneyder v. Smith*, 653 F.3d 313 (3d Cir. 2011), Defendants are not entitled to immunity for their "alleged failures to make arrangements with Alfred or to take any steps to prevent an innocent witness's prolonged and unreasonable detention." *Id.*

While recognizing the Magistrate Judge's frustration with the events alleged, the Court finds that the law of absolute prosecutorial immunity requires a different result. In *Buckley v. Fitzsimmons*, 509 U.S. 259, 271-73, 113 S. Ct. 2606, 125 L.Ed.2d 209 (1993), the Supreme Court, examining what claims, if any, fall outside the scope of a prosecutor's absolute immunity, reaffirmed the *Imbler* approach, "which focuses on the *conduct* for which immunity is claimed, not on the harm that the conduct may have caused or the question [of] whether it was lawful." In other words, the focus of this Court's inquiry is on the nature of the *conduct of DA Duhe and ADA Charrier* – not on the length of time that Alfred remained incarcerated under the warrant, and not on whether the actions of Duhe and Charrier were proper or lawful. Because it is well-established that Defendants' conduct in advocating for Alfred's detention pending the JohnLewis trial was advocatory, their conduct is protected by absolute immunity. *Buckley*, 509 U.S. at *Id.* at 272-73 (an out-of-court "effort to control the presentation of [a] witness' testimony" is entitled to absolute immunity because it is "fairly within [the prosecutor's] function as an advocate.").

Furthermore, the cases cited in the R&R, *Odd* and *Schneyder*, are distinguishable and, in any event, are not binding on this Court. In *Odd*, the court addressed the claims of two reluctant but essential witnesses in separate murder cases; both had been detained as material witnesses for trials. *Odd*, 538 F.3d at 205-06. With respect to Schneyder, the judge directed the ADA to notify him of any delays in the trial. *Odd*, 538 F.3d at 205-06. After the trial was continued, the ADA failed to notify the judge of the continuance, and Schneyder remained incarcerated. *Id.* Similarly, through a series of oversights, Odd, who had been detained to testify in a

separate matter, remained incarcerated after that matter was dismissed.  *Id.* at 206. Both plaintiffs remained incarcerated for more than 50 days because of the ADAs' failures to keep the courts informed of the progress of the criminal proceedings and the custodial status of the witnesses.  In both cases, the courts held that the ADAs had a duty of disclosure that was neither discretionary nor advocative, but was instead a purely administrative act not entitled to the shield of immunity.  *Odd*, 538 F.3d at 217, *aff'd, Schneyder v. Smith*, 653 F.3d 313, 334 (3d Cir. 2011).  They were, therefore, not entitled to absolute immunity.

The facts alleged in this case are distinguishable.  This is not a case where the state court was unaware of a witness's continued detention because the prosecutor failed to comply with a court order nor is it a case where a witness remained detained after a trial was no longer being prosecuted.  Rather, here, each of the actions taken by the DA Defendants in advocating for Alfred's continued detention were deliberate and intimately associated with the DA Defendants' preparation of the Bryson JohnLewis murder trial.  Moreover, the state court judge was at all relevant times aware that Alfred remained detained and of the date the JohnLewis case was set for trial, making *Odd* and *Schneyder* inapposite.  Thus, while the *Odd* and *Schneyder* courts characterized the actions of the ADAs as purely administrative in function, here, the actions of the DA Defendants were undoubtedly advocatory.  Further, this Court specifically finds that, given the unique evidentiary and procedural requirements faced by the government in prosecuting a criminal trial – including, among other things, the potential application of the Sixth Amendment's Confrontation clause and the Fifth Amendment's Double Jeopardy clause in the event

a witness fails to appear – there is hardly a more integral part of a district attorney's advocatory role than securing the appearance of witnesses at trial.  And, at bottom, at no time during course of events giving rise to this lawsuit were the actions of the DA Defendants ever directed at anything other than securing the presence of a government witness to testify at a murder trial.

Moreover, and just as importantly, the Louisiana Material Witness Statute assigns responsibility for determining the propriety, scope, and appropriate protections for material witness warrants *to the courts*, not the prosecutors.  That is, the statute provides that "when it appears … that the testimony of any witness is essential to the prosecution or the defense, as the case may be, and it is shown that it may become impracticable to secure the presence of the person by subpoena, *a judge* … shall issue a warrant for the arrest of the witness … [who shall be] held in the parish jail, or such other suitable place as shall be designated by the court"  La. R.S. § 15:257 (emphasis added).  The statute then gives the judge the discretion to issue an appearance bond for the material witness or keep the witness detained through trial. *Id*.; *see also Adams v. Hanson*, 656 F.3d 397, 408 (6th Cir. 2011) (while it was the DA's job to present information about witnesses to the court, where material witness was arrested pursuant to a signed order from the trial judge, it was the court's duty to respond with appropriate protections; whether or not the constitutional rights of the detained witness were violated, the DA's acts are protected by absolute immunity). Thus, the statutory scheme of the material witness statute expressly prescribes oversight of material witness incarcerations to Louisiana state court judges.

On this point, the record shows that the sufficiency of the evidence justifying the Plaintiff's continued detention was tested – and affirmed – twice by the state judiciary after Alfred's arrest.  First, on September 6, 2023, a hearing was held before Judge Anthony Thibodeaux of the 16th Judicial District Court on Plaintiff's Motion to Release.  After the hearing, Judge Thibodeaux ruled:

> …It is undoubted that the witness is essential to the prosecution of this case.  Considering the risk of witness tampering, the fact that the witness had knowledge that the State of Louisiana was trying to obtain her cooperation and need to speak to her … I find it was appropriate to issue the warrant for the arrest of the witness. Nonetheless that has been done by another judge. …And she has already been arrested.  The Judge was compelled to order that she be held in the parish jail, or such other suitable place as shall be designated by the court until she would give an appearance bond or until her testimony would be given in the cause of the case.  So it's of no moment that Judge ordered that she be held until the district attorney's office could interview her.  Okay.  He had no authority to do that.  He could only order that she be held until the case was tried … So the law hasn't been violated. Okay --- or until bail was provided as it would in a defendant in a criminal case.  That's what the law says and that's what I'm bound to follow.  So, in accordance with Article 570, I'm sorry 257, 15:257 **she's to be held until the trial on the merits which is scheduled for September 25, 2023**.  Thank you.

[Doc. 28-2, p. 15, ll. 26-32; p. 16, ll. 1-22] (emphasis added).  Second, Alfred sought supervisory relief with the Louisiana Third Circuit Court of Appeal, which was denied.[7]  Thus, the record clearly shows that the state courts were aware that Alfred was detained; the length of time that she had been detained; and the fact that she

---

[7]    The Third Circuit ruled:

> Based on the scant record properly before this Court, the district court did not abuse its discretion in its September 6, 2023, ruling regarding the material witness warrant against Tayjha Alfred.

[Doc. 38-1].

would not be released until after she testified at the JohnLewis trial.  Whether or not this Court agrees with how this matter was handled by the DA Defendants and the state judiciary is of no consequence.[8]  The pre-trial procedure that was undertaken by the District Attorney's Office and the state court judiciary to secure the Plaintiff's presence at trial was not administrative in nature.  It was unequivocally a critical part of the advocatory process.

Finally, the Court addresses the Magistrate Judge's finding that the DA Defendants had a "constitutional duty, independent of a court's order" to ensure that Alfred did not remain in jail for a lengthy period of time.  Though, of course, prosecutors have many special obligations and responsibilities to the public and the criminally accused,[9] the alleged breach of any of these duties do not operate to negate absolute prosecutorial immunity from damages suits under § 1983 for advocatory conduct.  For example, in *Brady v. Maryland*, 373 U.S. 1194,1196-97, 83 S. Ct. 1194, 10 L.Ed.2d 215, the Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violated an accused's due process, yet

---

[8]      Under the principles of federalism, this Court's role is not to review the decisions of the state trial and appellate courts to decide whether such decisions are correct or well-supported.

[9]      *See, e.g., In re White*, 355 So. 3d 1085, 1092 (La. 2/24/23) (recognizing duties owed by attorneys to clients, the public, the legal system, and the legal profession and imposing sanctions, including suspension or disbarment, for conduct that causes actual and potential harm); *In re Andry*, 59 F.4th 203, 207 (5th Cir.), *cert. denied sub nom., Andry v. Law. Disciplinary Comm. of the United States Dist. Ct. for the E. Dist. of Louisiana*, 144 S. Ct. 77, 217 L.Ed.2d 14 (2023) (a federal court may hold attorneys accountable to the state code of professional conduct).

a prosecutor who withholds *Brady* material is still entitled to absolute immunity from civil suit. *See Imbler*, *supra*.; *Knapper*, *infra*.

Make no mistake: this Court is sympathetic to Alfred's plight as alleged. But the Supreme Court has recognized that application of the doctrine of absolute immunity may even sometimes "leave the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty." *Imbler*, 424 U.S. at 427; *Holmes v. White*, 2024 WL 758384, at *12 (E.D. La. Feb. 23, 2024), *appeal dismissed*, 2024 WL 4415060 (5th Cir. May 15, 2024). The doctrine of absolute immunity is a policy compromise, the Supreme Court having determined that "the alternative of qualifying a prosecutor's immunity would disserve the broader public interest." *Id.* This Court agrees and, in any event, is bound by law to apply it in this case.

Considering the foregoing, the Court concludes that the DA Defendants are entitled to absolute prosecutorial immunity in connection with their actions both before and after the material witness arrest warrant was obtained.

## II.    State Law Claims

Alfred alleges claims under Article I, Sections 2 and 5 of the Louisiana Constitution for alleged "prolonged detention" and alleged "unlawful continuing seizure," as well as a claim for negligent infliction of emotional distress. In their Motion, the DA Defendants move for dismissal of all state law claims against them on grounds they are absolutely immune from suit under Louisiana law. In her R&R, the Magistrate Judge addressed only Alfred's tort claim for negligent infliction of

emotional distress, finding that the claim survives Rule 12(b)(6). The R&R did not address Alfred's claims under the Louisiana Constitution.

In *Knapper v. Connick*, 681 So. 2d 944, 946 (La. 1996), the Louisiana Supreme Court, following *Imbler*, held that Louisiana prosecutors have absolute immunity from state law claims of prosecutorial misconduct that are intimately associated with the judicial phase of the criminal process. The Louisiana Supreme Court recently re-affirmed the *Knapper* doctrine in *Jameson v. Montgomer*, 366 So. 3d 1210 (La. May 5, 2023), *rehearing denied*, 364 So. 3d 1153 (La. June 27, 2023). *See Singleton, supra*, at 405–06 (the Louisiana Supreme Court in *Knapper* cited heavily to federal law in its decision and adopted the functional approach that federal courts employ when analyzing prosecutorial absolute immunity issues, therefore, any conduct for which prosecutors enjoy absolute immunity in this case will apply equally to Plaintiffs' federal and state law claims). Louisiana Courts have applied absolute immunity whether or not such claims are brought against the prosecutor in his alleged official capacity or individual capacity. *Spikes v. Phelps*, 131 F. App'x 47, 49 (5th Cir. 2005) (noting that, when granting absolute immunity to prosecutors, Louisiana courts do not distinguish between personal and official capacity suits against district attorneys who have acted within the scope of their prosecutorial duties), *citing Sinclair v. Louisiana Dept. of Public Safety and Corrections*, 769 So. 2d 1270 (La. App. 1st Cir. 2000) and *Connor v. Reeves*, 649 So. 2d 803 (La. App. 2d Cir. 1995). Considering the foregoing, for the same reasons Alfred's federal claims are barred by absolute immunity; her state law claims are barred as well.

III.    **Official Capacity Claims Against DA Duhe**

   A.    **Eleventh Amendment**

Alfred alleges claims against DA Duhe in his official capacity for violations of her federal and state constitutional rights. The Magistrate Judge found that Duhe is not protected by the Eleventh Amendment, which shields state actors from civil liability in federal court. Defendants object.

Official capacity suits against district attorneys are generally regarded as suits against the local government entity. *Hudson v. City of New Orleans*, 174 F.3d 677, 680 (5th Cir. 1999). In *Hudson*, the Fifth Circuit specifically addressed whether the Eleventh Amendment bars § 1983 lawsuits against Louisiana district attorneys in their official capacities. "The *Hudson* court applied the six-factor test from *Clark v. Tarrant County, Texas*, 798 F.2d 736, 744 (5th Cir. 1986), and found that Louisiana district attorney offices (and therefore the district attorneys in their official capacities) were not protected by the Eleventh Amendment."[10] *Jason*, 2017 WL 993152, at *4. *See also Spikes v. Phelps*, 131 F. App'x 47, 49 (5th Cir. 2005) (contrary

---

[10]    Under Fifth Circuit precedent, courts should look to the following six factors in determining if a governmental body acts for the state: (i) whether the state statutes and case law view the agency as an arm of the state; (ii) the source of the entity's funding; (iii) the entity's degree of local autonomy; (iv) whether the entity is concerned primarily with local as opposed to statewide problems; (v) whether the entity has the authority to sue and be sued in its own name; and (vi) whether the entity has the right to hold and use property. *Hudson*, 174 F.3d at 681. The Magistrate Judge applied these factors in her R&R and determined that they weigh against a finding of Eleventh Amendment immunity with respect to Alfred's official capacity claims against DA Duhe. The Magistrate Judge particularly noted that the DA Defendants acknowledge the funding for the district attorney remains as it was at the time of *Hudson*. *See also* La. R.S. § 13:5108.1, providing that the state is obligated to defend and indemnify "covered individuals," the definition of which explicitly excludes district attorneys. La. R.S. § 13:5108.1(E)(3).

to *Esteves*, and based on Louisiana law, a parish district attorney is not entitled to Eleventh Amendment immunity); *Holmes v. White*, 2024 WL 758384, at *12 (E.D. La. Feb. 23, 2024), *appeal dismissed*, 2024 WL 4415060 (5th Cir. May 15, 2024).  Thus, the Magistrate Judge correctly rejected Duhe's argument that the holding in *Hudson* is distinguishable and finds that the Eleventh Amendment does not preclude official capacity suit against Louisiana district attorneys.  *See also Spikes*, 131 F. App'x at 9; *Jason*, 2017 WL 993152, at *5; *Singleton, supra*, at 778, *citing Burge v. Par. of St. Tammany*, 187 F.3d 452, 466 (5th Cir. 1999) ("The rule in this circuit is that a Louisiana district attorney, sued in his or her official capacity, is a local government official who is not entitled to Eleventh Amendment immunity."); *Phillips v. Whittington*, 497 F.Supp.3d 122, 153 (W.D. La. 2020); *Darden v. Vines*, No. 6:22-CV-00404, 2023 WL 11830304, at *2 (W.D. La. Mar. 10, 2023), *report and recommendation adopted*, No. 6:22-CV-00404, 2023 WL 6178709 (W.D. La. Sept. 21, 2023), *appeal dismissed*, No. 23-30700, 2024 WL 1433633 (5th Cir. Feb. 16, 2024).

Considering the foregoing, the Court affirms the Magistrate Judge's finding that DA Duhe in his official capacity is not protected by the Eleventh Amendment.

### B.    *Monell* Claim

Having found that DA Duhe is not protected by Eleventh Amendment immunity, the Court next considers whether Alfred has stated a *Monell* claim against DA Duhe in his official capacity.  "A suit against a government officer 'in his official capacity' is the same as a suit against the government entity of which he is an agent." *Jason*, 2017 WL 993152, at *5, *citing Burge v. Par. of St. Tammany*, 187 F.3d 452, 468 (5th Cir. 1999).  "Section 1983 offers no respondeat superior liability." *Pineda v.*

*City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). However, municipal and local offices, such as the office of the district attorney, may face § 1983 liability when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978).

Section 1983 municipal liability requires proof of three elements: (1) a policymaker, (2) an official policy or custom, and (3) a violation of constitutional rights whose 'moving force' is that policy or custom. *Jason*, 2017 WL 993152, at *5, *citing Davis v. Tarrant Cty., Tex.*, 565 F.3d 214, 227 (5th Cir. 2009). Thus, a plaintiff seeking to impose liability on a municipality under § 1983 must "identify a municipal policy or custom that caused the plaintiff's injury." *Id.*, *quoting Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 403–04, 117 S. Ct. 1382, 137 L.Ed.2d 626 (1997).

The R&R concluded that: (i) Duhe is a policymaker under well-established Fifth Circuit jurisprudence;[11] (ii) Alfred adequately alleged a violation of her Fourth and Fourteenth Amendment rights when she alleged she was incarcerated for six months as an innocent witness without the opportunities for counsel, bail, or to defend herself; and (iii) Alfred has sufficiently alleged that Duhe has a policy, practice, or custom of applying for material witness arrest warrants without probable cause and without first determining whether it may become impracticable to secure

---

[11]    *See Burge v. Parish of St. Tammany*, 187 F.3d 452, 469 (5th Cir.1999) ("a district attorney is the independent and final official policymaker for all of the administrative and prosecutorial functions of his office.")

the witnesses' appearances by trial subpoena.  The Magistrate Judge also concluded that Alfred's allegations support a claim for *Monell* liability based on Duhe's alleged personal involvement in the warrant application process.

The Magistrate Judge noted that Alfred's Complaint alleges that DA Duhe sought and/or was granted three material witness arrest warrants in 2021, four in 2022, and one in 2023.  [Doc. 6, p. 27, n.5].  Alfred alleges that she sought details regarding past material witness arrest warrants, but that the DA had not yet provided the information.  *Id.* at p. 28, n.6.  She specifically alleges eight other alleged incidents of unlawful material witness arrests and incarceration, including four related to the JohnLewis/Layne trials.  Alfred alleges that each witness was detained as a material witness without an opportunity for counsel, adequate process, or the opportunity to post bond.  [Doc. 6, ¶¶ 270-306].  Alfred argues that her allegations show that Defendants misused the material witness statute every time the statute was invoked, translating to a proportion of eight out of eight, or 100%.

The Fifth Circuit has established three ways of establishing municipal policy:

> First, a plaintiff can show "written policy statements, ordinances, or regulations."  Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy."  Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim."

*Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (internal citations omitted).  After careful review of the record, the Court concludes that Alfred has sufficiently stated a potential *Monell* claim and should be permitted to engage in discovery on the issue of whether DA Duhe has a policy, practice, or custom of

applying for material witness arrest warrants improperly under the Louisiana Material Witness Statute. Consequently, Defendants' motion to dismiss this claim will be denied, as will Defendants' motion to dismiss Alfred's official capacity claim against DA Duhe for reputational damages.[12]

## V.    Alfred's Standing for Declaratory and Injunctive Relief

Finally, Alfred seeks declaratory and injunctive relief from Defendants' alleged threats to re-incarcerate her until the trial of Bryson JohnLewis's co-defendant, Travis Layne.[13] The Magistrate Judge found that Alfred has standing under Article III to assert claims for declaratory and injunctive relief, concluding Alfred's alleged intention to comply with the subpoena in the future does not "render the threat of incarceration any less likely." [Doc. 42, p.41].

Article III standing requires, at a minimum, that the plaintiff has a "personal stake" in the claim. The "irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L.Ed.2d 351 (1992). First, a plaintiff must demonstrate that they have "suffered a concrete and particularized injury that is either actual or imminent." *Massachusetts v. E.P.A.*, 549 U.S. 497, 517, 127 S. Ct. 1438, 167 L.Ed.2d 248 (2007). Second, a plaintiff must show that there is a causal connection between the alleged injury and the complained-of conduct – essentially, that "the injury is fairly traceable

---

[12]    *Marrero v. City of Hialeah*, 625 F.2d 499, 513–14 (5th Cir. 1980) (because "the injury to reputation is simply an element of the damages suffered as a result of the violation of appellants' Fourth Amendment rights[,] damages for injury to reputation caused by [an] unlawful search and seizure are recoverable.").

[13]    *See, e.g.*, [Doc. 6, ¶¶ 319, 346, 362, and PRAYER FOR RELIEF].

to the defendant." *Id.*  Finally, standing requires that it "be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 560, *quoting Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42, 96 S. Ct. 1917, 48 L.Ed.2d 450 (1976).  With respect to the third factor, the threat of future injury must be "certainly impending;" mere "[a]llegations of possible future injury do not suffice." *Adams v. Pearl River Valley Water Supply Dist.*, 2022 WL 2829756, at *3 (5th Cir. July 20, 2022) (internal quotation marks omitted), *citing Clapper, et al v. Amnesty International USA, et al*, 568 U.S. 398, 409, 133 S. Ct. 1138, 1152-53, 85 L.Ed.2d 264 (2013).  While "[p]ast wrongs ... can be 'evidence bearing on whether there is a real and immediate threat of repeated injury,' ... alone they may be insufficient to establish standing for prospective relief." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

Here, the alleged threat of a future arrest on a material witness warrant is highly speculative and completely dependent on whether Alfred refuses to honor a trial subpoena and whether the DA's Office seeks another material witness warrant. Alfred herself has indicated that she will appear at the Travis Layne trial and testify. Therefore, the threat of future injury is far too attenuated at this juncture to establish standing.  Considering the foregoing, the Court finds that there is no imminent injury, and Alfred lacks standing to seek declaratory and injunctive relief in connection with Defendants' alleged threats to re-incarcerate her until the trial of Travis Layne.

CONCLUSION

Thus, for the foregoing reasons,

IT IS HEREBY ORDERED that the Court OVERRULES the Plaintiff's Objections to the R&R [Doc. 45] and SUSTAINS IN PART and OVERRULES IN PART the Defendants' Objections to the R&R [Doc. 46].

IT IS FURTHER ORDERED that the Court ADOPTS IN PART and OVERRULES IN PART the R&R [Doc. 42] as stated herein.

IT IS FURTHER ORDERED that Defendants' MOTION TO DISMISS [Doc. 28] is GRANTED IN PART AND DENIED IN PART. Plaintiff's individual claims against DA Duhe and ADA Charrier are DISMISSED WITH PREJUDICE based on the doctrine of absolute immunity. Plaintiff's claims for declaratory and injunctive relief are DISMISSED WITHOUT PREJUDICE for lack of standing. Plaintiff's official capacity claims against DA Duhe have been sufficiently pled and remain viable at this stage of the proceeding.

THUS, DONE AND SIGNED in Chambers on this 18th day of October 2024.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE