UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **TAYJHA ALFRED** | **CASE NO. 6:24-CV-00274** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **BO DUHE ET AL** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING

Before the Court is Defendant's Motion to Quash or, alternatively, Modify Subpoenas (Rec. Doc. 72), in which Defendant seeks to quash Plaintiff's subpoenas duces tecum issued to non-parties, Iberia Parish Sheriff Thomas Romero, Iberia Parish Jail, and Louisiana State Police. Plaintiff opposed the motion (Rec. Doc. 78), and Defendant replied (Rec. Doc. 83). Non-parties, Sheriff Romero and Iberia Parish Criminal Justice Facility ("Iberia Jail"), filed a response (Rec. Doc. 84).

Relatedly, Plaintiff filed a Motion to Compel Discovery Responses and Production of Documents seeking on order compelling Defendant to supplement discovery responses. (Rec. Doc. 79). Defendant opposed the motion (Rec. Doc. 85). Defendant then filed a Motion for Protective Relief, raising the same issues addressed in the motions to quash and compel. (Rec. Doc. 91). Considering the overlapping nature of the discovery issues, and in the hope of providing clarity for

the parties in ongoing discovery, the Court conducted a hearing on July 29, 2025 and now rules as follows.

## Facts and Procedural History

Plaintiff filed this suit pursuant to 42 U.S.C. §1983 for constitutional violations after she was incarcerated for six months as a material witness in a murder trial. In adjudicating Defendants' motions to dismiss under Rule 12(b)(6), the Court dismissed Plaintiff's claims against the individual defendants, District Attorney Duhe and Assistant District Attorney Charrier; however, the Court held Plaintiff stated a *Monell* claim against DA Duhe in his official capacity. (Rec. Doc. 52). Accordingly, the Court ruled that Plaintiff "should be permitted to engage in discovery on the issue of whether DA Duhe has a policy, practice, or custom of applying for material witness arrest warrants improperly under the Louisiana Material Witness Statute. (Id., at p. 20-21). As the Court stated:

> The Fifth Circuit has established three ways of establishing municipal policy:
>
> > First, a plaintiff can show "written policy statements, ordinances, or regulations." Second, a plaintiff can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." Third, even a single decision may constitute municipal policy in "rare circumstances" when the official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim."
>
> *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (5th Cir. 2019) (internal citations omitted).

(Rec. Doc. 52, p. 20).

Since the Court held that Plaintiff stated a *Monell* claim and authorized discovery on the issue, Plaintiff has propounded discovery to Defendant and issued subpoenas duces tecum to non-parties. Defendant's primary objection to both the non-party subpoenas and Plaintiff's discovery is to relevance. Defendant further objects to production of certain information on the grounds of privilege.

## Law and Analysis

### I. The Scope of Discovery

At issue is the scope of permissible discovery, a well-established concept:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

F.R.C.P. Rule 26(b)(1).

Further, the court must limit the frequency or extent of discovery when:

(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

(iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Rule 26(b)(2)(C).

F.R.C.P. Rule 45 governs the issuance of subpoenas duces tecum to non-parties. On timely motion, the court must quash or modify a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to undue burden. Rule 45(d)(3)(A)(ii-iii).

## II.     Defendant's standing to challenge subpoenas to non-parties.

The parties agree that Defendant has standing to challenge Plaintiff's subpoenas to non-parties on the grounds that the subpoenas seek privileged information. The parties dispute Defendant's standing to challenge the subpoenas on the grounds of relevance.

"[A] plaintiff cannot challenge a Rule 45 subpoena directed to a third party on the basis that it violates another person's privacy rights ..., that the subpoena is overly broad, or that the subpoena seeks information that is irrelevant because only the responding third party can object and seek to quash a Rule 45 subpoena on those grounds." *Bounds v. Cap. Area Fam. Violence Intervention Ctr., Inc.,* 314 F.R.D. 214, 218 (M.D. La. 2016), quoting *Frazier v. RadioShack Corp.,* No. 10–855, 2012 WL 832285, at *1 (M.D.La. Mar. 12, 2012).

Nonetheless, a party may challenge relevance to a subpoena through Rule 26 by moving for a protective order:

> Although a party does not have standing under Rule 45 to raise certain challenges, a party does have standing to challenge relevance

> under Rule 26(c). A party may not, however, use a motion for Rule 26(c)(1) protective order to enforce, on a non-party's behalf, Rule 45(c)'s geographical limits or compliance time requirements. These non-party-specific protections go beyond and are separate from the scope of discovery issue that fall within the parameters of a Rule 26(c)(1) protective order.

*Louisiana Corral Mgmt., LLC v. Axis Surplus Ins. Co.*, 650 F. Supp. 3d 491, 501 (E.D. La. 2023).

Since filing his Motion to Quash, Defendant has moved for protective relief under Rule 26. (Rec. Doc. 91). Regardless, the non-parties in this case filed a response raising a relevance objection. (Rec. Doc. 84). Further, relevance is a key contested issue in Plaintiff's Motion to Compel, also addressed in this ruling. The Court declines to deny Defendant's motion to quash for lack of standing.

### III. <u>Relevance of requested information.</u>

"Generally, the scope of discovery is broad and permits the discovery of any nonprivileged matter that is relevant to any party's claim or defense." *Crosby v. Louisiana Health Serv. & Indem. Co.,* 647 F.3d 258, 262 (5th Cir. 2011), citing Rule 26(b)(1). "A discovery request is relevant when the request seeks admissible evidence or is reasonably calculated to lead to the discovery of admissible evidence." *Id*. Importantly, "there is a surprising dearth of case law in this circuit that relates to discovery limitations in Section 1983 claims, including *Monell* claims," and "district courts in other circuits, routinely recognize that 'broad and substantial' discovery is often required that is otherwise not involved if a plaintiff sued only the individuals

directly in the deprivation of her rights." *Brown v. City of Alexandria*, No. 1:20-CV-00541, 2022 WL 951407, at *4 (W.D. La. Mar. 29, 2022), citing *Maurer v. St. Tammany Par. Sch. Bd.*, 2020 WL 12801030, at *2 (E.D. La. Jun. 26, 2020) (citing cases).

Defendant argues that Plaintiff is only entitled to discovery "on the issue of whether DA Duhe has a policy, practice, or custom of applying for material witness arrest warrants improperly under the Louisiana Material Witness Statute." Rec. Doc. 72, citing the Court's ruling at Rec. Doc. 52, p. 20-21. Defendant's hyper-interpretation of the Court's ruling ignores the well-established law "that there must be an underlying constitutional violation for there to be a claim under *Monell*." *Winder v. Gallardo*, 118 F.4th 638, 647 (5th Cir. 2024), *cert. denied,* No. 24-975, 2025 WL 1727396 (U.S. June 23, 2025). Implicit in the Court's ruling allowing Plaintiff to proceed with a potential *Monell* claim is that Plaintiff stated a claim for a constitutional violation. Unless Defendant has stipulated that a constitutional violation occurred, discovery seeking information pertaining to Plaintiff's alleged constitutional violations is relevant.

Defendant's narrow reading of the Court's ruling also ignores the immediately preceding statement of law that a plaintiff can show policy in one of three ways: 1) through written policy statements, ordinances, or regulations; 2) a sufficiently widespread practice; or 3) by showing a final policy maker's single decision that

constituted a constitutional violation. (Rec. Doc. 52, p. 20, citing *Webb*, *supra*). Any information concerning written statements, ordinances, or regulations, any information potentially showing a common, widespread practice, or any information related to DA Duhe's decision(s) regarding Plaintiff's alleged constitutional violations (e.g. due process violations during her incarceration as a material witness) is relevant.

Plaintiff's subpoenas duces tecum seek information pertaining to her arrest as a material witness, information pertaining to other arrested material witnesses, and information pertaining to policies, etc. relating to material witness arrests. (Rec. Doc. 72-2, p. 14-15; 78-80). Defendant offers no specific argument as to any particular request he contends is irrelevant, and the Court appreciates none. Plaintiff's requests to non-parties are relevant in the discovery context, especially as broadly allowed for *Monell* claims.

For the same reasons, the Court finds that Plaintiff's interrogatories and requests for production to Defendant are relevant. Requests seeking information pertaining to the facts surrounding her arrest and incarceration as a material witness are relevant to whether she suffered a constitutional violation, a necessary element in her *Monell* claim. Requests seeking information regarding the arrests of other material witnesses are also relevant to whether Defendant recognized a policy or custom of improperly arresting and jailing material witnesses. Requests seeking

information regarding policies and procedures (written and unwritten) pertaining to material witnesses are relevant.

Defendant's relevance objection in response to Plaintiff's requests states: "Two judges of the 16th Judicial District have determined that the requirements of [the material witness statute] have been satisfied." Defendant then cites the Court's ruling regarding a state court judge's oversight of material witness incarcerations. (e.g. Rec. Doc. 79-6, Response to Req. No. 1). Plaintiff does not contend that a state court judge violated her constitutional rights. Indeed, she alleges that a state court judge instructed the DA to make arrangements for her trial testimony, and that the DA failed to do so. She alleges that the DA has a policy of misusing the material witness statute that resulted in her unconstitutional incarceration. The Court overrules Defendant's relevance objections.

## IV. Defendant's privileges.

Defendant objects to production of documents relating to the JohnLewis and Layne criminal proceedings based on a Louisiana public records privilege for pending criminal litigation, the federal law enforcement privilege, the attorney-client privilege/work-product doctrine, and the privilege protecting grand jury proceedings.

A) **Public Records and Law Enforcement Privileges.**

Defendant first asserts a privilege against disclosure of records pertaining to pending criminal litigation set forth in Louisiana's public records law. La. R.S. 44:3(A)(1) (as applicable here) protects records pertaining to pending criminal litigation until such litigation has been finally adjudicated or otherwise settled.

> "Criminal litigation" means an adversarial contest begun by formal accusation and waged in judicial proceedings in the name of the State, by the district attorney, on the one hand, and against the defendant on the other. Criminal litigation is "pending" when the formal accusation is instituted either by the district attorney (bill of information) or by the grand jury (indictment).

*Nix v. Daniel,* 95-1393 (La. App. 1 Cir. 2/23/96), 669 So. 2d 573, 575, *writ denied,* 96-0878 (La. 10/25/96), 681 So. 2d 360.

Plaintiff contends this state law privilege does not apply to her federal law claims in this federal court proceeding. She correctly argues that federal common law regarding privilege applies to cases arising under federal law and to cases which raise both federal and state law claims. See discussion in *Snearl v. City of Port Allen*, No. CV 21-455-JWD-RLB, 2025 WL 1180717, at *5 (M.D. La. Apr. 23, 2025). Rather than applying the state public records privilege, the court in a federal law case should consider the similar federal law enforcement privilege. *Id*; *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991). See also *Beckett v. Serpas*, No. CV 12-910, 2012 WL 13001310, at *4 (E.D. La. Oct. 18, 2012) (agreeing that La. R.S. 44:3 did not control discovery rulings in a federal law case, and applying the law

enforcement privilege instead). Defendant relies on *Chastant v. Prudential Ins. Co. of Am.*, No. 11-CV-626, 2011 WL 4007863, at *2 (W.D. La. Sept. 8, 2011) for his argument that the state privilege applies in this federal case; however, as noted in the opinion, *Chastant* involved state law claims in a case of diversity jurisdiction and was governed by state substantive law, including privilege. Thus, the Court finds that the federal law enforcement privilege governs disclosure in this case.

The Fifth Circuit recognizes a law enforcement privilege which protects, in addition to information pertaining to confidential informants, information pertaining to ongoing criminal investigations. The Fifth Circuit instructed:

> The oft-cited *Frankenhauser* test consists of weighing the following ten factors: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case. ...
>
> Additionally, the law enforcement privilege is bounded by relevance and time constraints. … Several types of information probably would not be protected, including documents pertaining to: (1) people who have been investigated in the past but are no longer under investigation, (2) people who merely are suspected of a violation

> without being part of an ongoing criminal investigation, and (3) people who may have violated only civil provisions. Furthermore, the privilege lapses after a reasonable period of time. Therefore, the privilege lapses either at the close of an investigation or at a reasonable time thereafter based on a particularized assessment of the document.

*In re U.S. Dep't of Homeland Sec.,* 459 F.3d 565, 570–71 (5th Cir. 2006) (citations omitted).

Defendant submits that the JohnLewis criminal proceedings remain pending in the appellate court and that the Layne trial is set for September 29, 2025. Although these state criminal proceedings remain pending (and thus are arguably protected by the state public records privilege), the question for purposes of the federal law enforcement privilege is whether a criminal *investigation* is pending. Defendant states that the court "recognizes a 'law enforcement privilege' where there is an ongoing investigation or ongoing prosecution." (Rec. Doc. 81-2, p. 9, citing *In Re U.S. Dept. of Homeland Security, supra*, *Brown v. Thompson*, 430 F.2d 1214, 1215 (5th Cir. 1970), and *Coughlin v. Lee*, 946 F.2d 1152, 1160 (5th Cir. 1991)). Contrary to Defendant's assertion, none of the cited cases concerns documents pertaining to ongoing *prosecutions*—only investigations.

In applying the *Frankenhauser* factors, the Court finds that the documents pertaining to the JohnLewis and Layne trials are discoverable, subject to the protective order already in place. Those cases are well beyond the investigation stage, with trial having already occurred or scheduled to occur in less than two

months. Defendant did not present any argument addressing any particular factor and has not shown how disclosure of documents to Plaintiff (subject to previously stipulated confidentiality provisions) would discourage citizens from providing information, place any confidential informant at risk, or otherwise compromise the criminal process.

The Court finds that the information requested from non-parties and in Plaintiff's discovery is not subject to the law enforcement privilege on the showing made. To the extent requested information pertains to any criminal matter that is currently under *investigation*, the parties may seek the Court's guidance if necessary after reasonable efforts to resolve. The Court emphasizes Counsel shall consider the terms and effectiveness of their mutually established Protective Order (Rec. Doc. 77) prior to seeking Court guidance.

## V. **Attorney-Client Privilege and Work Product.**

Defendant seeks to quash Plaintiff's requests to non-parties on the grounds of attorney-client privilege and work product doctrine. The attorney-client privilege protects certain documents from disclosure:

> The attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26. For a communication to be protected under the privilege, the proponent must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding. Determining the applicability of the privilege is a "highly fact-specific" inquiry, and the party asserting the privilege bears the burden of proof.

> Once the privilege has been established, the burden shifts to the other party to prove any applicable exceptions. Ambiguities as to whether the elements of a privilege claim have been met are construed against the proponent.

*Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 695 (5th Cir. 2017) (cleaned up).

The work-product rule, set forth in Rule 26(b)(3)(A), protects from disclosure documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative.

Defendant did not provide a privilege log or otherwise identify any particular documents possessed by non-parties that may be protected. Indeed, counsel for non-parties Sheriff Romero and Iberia Jail stated at the hearing that the documents have not yet been identified. Defendant's broad reference to the attorney-client/work-product privilege is useless absent reference to specific documents.

### VI. **Defendant's obligations regarding search for information.**

The parties dispute Defendant's diligence in searching for documents requested in discovery. Defendant's counsel submitted that their efforts to locate responsive documents consisted of 1) searching the DA's file management system, Karpel, but that the Karpel system was incompatible with Plaintiff's request to search for specific terms (Rec. Doc. 85-1; 85-2); 2) an IT professional's search of DA office emails, including DA Duhe's emails (Rec. Doc. 85-3; 97); and 3) asking DA Duhe prior to his death to search his phone. (Rec. Doc. 85-3, p. 2). Defendant

further submits that assistant district attorneys' efforts to locate the requested documents have interfered with their prosecutorial duties. (Rec. Doc. 85-3). Defendant's counsel advised at the July 29, 2025 hearing that the DA's office had recently disclosed two additional devices belonging to Duhe, and they are working to preserve and search these devices.

Although Defendant's late revelation of two additional devices is concerning, the Court finds that Defendant has been diligent in the search for responsive information; however, it is unclear whether Defendant's searches of electronically stored information were limited based on his above-rejected theory of relevance. On one hand, Defendant's counsel attested to spending two full days in the DA's office assisting with the search, including attempting to use Plaintiff's search terms (Rec. Doc. 85-2), while, on the other hand, Defendant argued in opposition to Plaintiff's motion that "[t]he emails provided by Defendant in discovery were those mails obtained from this search effort that contained information within the scope of discovery as set forth by the District Court…" (Rec. Doc. 85, p. 8). Of course, as discussed above, the District Court did not limit the scope of discovery as Defendant now suggests.

Defendant further argues that Plaintiff's requests should be limited to a ten-year period of November 7, 2012 to November 7, 2022 (the date of the filing of the

Motion to Arrest Material Witness regarding Plaintiff). Plaintiff contends that the relevant time period should extend to the present.

The Court emphasizes that discovery in *Monell* claims often requires "broad and substantial amount of discovery. *Maurer; Brown, supra*. As such, some courts have allowed discovery of documents generated after the incident in question (e.g. *Lewis v. E. Baton Rouge Par.,* No. CV 16-352-JWD-RLB, 2018 WL 3862044, at *4 (M.D. La. Aug. 13, 2018) (authorizing discovery of post-incident documents as potentially identifying relevant individuals and clarification on what policies and practices existed at the time of the incident); *Sanchez v. Gomez*, No. EP-17-CV-133-PRM, 2020 WL 1036046, at *16 (W.D. Tex. Mar. 3, 2020) ((("[T]he Court is inclined to consider future instances as still probative in determining whether a 'pattern' existed at the time of [the incident]."). Nevertheless, district courts within the Fifth Circuit frequently limit discovery related to *Monell* claims to time periods of less than ten years, and often to a period of four or five years. *Estevis v. City of Laredo*, No. 5:22-CV-22, 2023 WL 9319061, at *6 (S.D. Tex. Mar. 31, 2023) (citing cases).

Acknowledging that the scope of discovery is considerably broader for *Monell* claims and that Defendant has agreed to produce documents pertaining to the JohnLewis and Layne proceedings notwithstanding that they were generated after November 7, 2022, the Court finds that the relevant time period for discovery purposes may extend to the date on which suit was filed in this matter (February 23,

2024).[1] The fact that the relevant time period thereby exceeds ten years is immaterial, given Defendant's agreement to produce documents generated since November 7, 2012.

To the extent Defendant's search efforts were limited based on his interpretation of relevance and/or with time limitations, additional efforts should be made based on the Court's findings herein. Plaintiff requests a Rule 30(b)(6) deposition of Defendant for the purpose of determining search efforts. The Court finds such a deposition is unwarranted at this time; however, Defendant should provide a list of all search terms and/or phrases utilized in search of all ESI.

### VII. Specific discovery requests

Plaintiff moves to compel Defendant to provide supplemental answers to the following interrogatories:

**Interrogatory No. 1** seeks identification of Defendant's policies, practices, and procedures relating to material witnesses. In supplemental response (after adopting previous lengthy objections), Defendant stated:

> **Respondent does not have any written policies, documents or communications responsive to this request.** When applying for material witness arrest warrants, Respondent complies with all applicable provisions and statutes under Louisiana law, including all articles of the Louisiana Code of Criminal Procedure; the rights and

---

[1] Based on the agreement by Defendant and the particular relevancy of discovery pertaining pertaining to the JohnLewis and Layne proceedings, such discovery may extend to the present date.

remedies afforded a material witness are set forth under the provisions of La. R.S. 15:257, *et seq*., which are incorporated herein and made a part hereof as if copied herein *in extenso*.

(Rec. Doc. 79-10, p. 62-63, emphasis as written). Plaintiff maintains the response leaves open the possibility of the existence of unwritten policies, etc. and vaguely states that Defendant complies with all applicable laws. The Court agrees the response is insufficient. Defendant shall supplement the response to affirmatively state the existence of any unwritten policies and to specifically any practices or procedures in which the DA's office engages in reference to material witnesses.

Interrogatory No. 5 asks Defendant to describe his efforts to ensure that use of material witness warrants does not violate the U.S. or state constitutions. Again, Defendant responded by repeating the question:

> [W]hen applying for material witness arrest warrants, Respondent complies with all applicable provisions and statutes under Louisiana law, including all articles of the Louisiana Code of Criminal Procedure; the rights and remedies afforded a material witness are set forth under the provisions of La. R.S. 15:257, *et seq*., which are incorporated herein and made a part hereof as if copied herein *in extenso*. **Further answering, Respondent complies with applicable Articles of the United States Constitution when applying for material witness arrest warrants.**

(Rec. Doc. 79-10, p. 66-67, emphasis as written).

The Court agrees the response is ambiguous and nonresponsive. Defendant shall supplement his answer to Interrogatory No. 5 to provide a specific response.

Interrogatory No. 6, 8, and 9 seek answers identifying certain items (e.g. lengths of time of witness incarcerations, communications with Plaintiff, and meetings with Plaintiff). In response to each, Defendant referred Plaintiff to documents produced.

Rule 33(d) provides:

If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by:

(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and

(2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

"Based on this rule, courts have required the party answering interrogatories to 'specify the information that [the requesting party] should review in sufficient detail to enable [the requesting party] to locate and identify the information in the documents as readily as [the answering party] could.'" *Hub Texas, LLC v. Arch Specialty Ins. Co.*, No. 5:21-CV-180-H-BQ, 2023 WL 11857614, at *4–5 (N.D. Tex. Feb. 7, 2023), quoting *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, No. 3:14-cv-2498-B, 2016 WL 2997744, at *9 (N.D. Tex. May 25, 2016). The responding party should identify specific documents by name or bates number,

rather than directing the requesting party generally to document productions. *Id.* Insofar as the requested information may be obtained in the public record, the responding party must nonetheless respond with documents that are in its actual or constructive control or possession. *Plain v. Safeco Ins. Co. of Oregon*, No. CV 23-820-BAJ-RLB, 2024 WL 1980126, at *6 (M.D. La. May 3, 2024) (collecting cases).

Defendant's answer to Interrogatory No. 6 (seeking the length of time of incarcerations of materials witnesses in cases brought since November 7, 2012) references produced criminal case files, specifically identified in his response to Interrogatory No. 3. Defendant also refers Plaintiff to publicly available records in the 16th Judicial District for the identified cases. To the extent Defendant does not have any additional information or documents in its possession or control, the Court finds Defendant's Answer to Interrogatory No. 6 is sufficient.

Defendant's answers to Interrogatories No. 8 (seeking information pertaining to communications with Plaintiff) and 9 (for information pertaining to meetings with Plaintiff) reference over 300 bates documents produced, but specifically reference "Motion and Order for Arrest of Material Witness Pursuant to R.S. 15:257 and Motion and Request for Issuance of Out-of-state Subpoena contained in…DA 00001-00036." (Rec. Doc. 79-10, p. 70-71). The parties did not attach the referenced documents. Given the title of the documents referenced, it is unclear whether the referenced documents would contain information regarding communications and

meetings. The Court finds a supplemental response is warranted. If Defendant has no further documents or information with the requested information, the supplemental response shall so state.

The Court shall issue a separate Order regarding the discovery motions addressed herein and the parties' obligations going forward.

Signed at Lafayette, Louisiana on this 31st day of July, 2025.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE