## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

TAYJHA ALFRED                         CASE NO.  6:24-CV-00274

VERSUS                                JUDGE DAVID C. JOSEPH

BO DUHE ET AL                         MAGISTRATE JUDGE CAROL B.
                                      WHITEHURST

## MEMORANDUM RULING

The parties present another discovery quagmire. Currently before the Court
are Plaintiff's Second and Third Motions to Compel (Rec. Doc. 136 and 148), which
Defendant Bo Duhe, in his official capacity, opposed (Rec. Doc. 147 and 156).
Plaintiff filed a reply to Defendant's opposition to her Third Motion to Compel (Rec.
Doc. 171). Plaintiff moves to compel Defendant to supplement certain discovery
responses and to fully produce documents which Defendant produced with
redactions or withheld as privileged. Plaintiff also moves to compel the Attorney
General, which intervened to defend the constitutionality of Louisiana's material
witness statute, to produce documents withheld as privileged. (AG's Response at
Rec. Doc. 155).

The Court upheld the undersigned's previous discovery ruling, overruling
Defendant's relevancy objections and, regarding Defendant's invocation of the
federal law enforcement privilege, instructed:

Defendant shall produce to opposing counsel and this Court a privilege log specifically identifying the documents withheld on the basis of privilege **on or before November 14, 2025**. With respect to each document withheld, Defendant shall identify: (1) the date the document was created; (2) the author of the document; (3) all recipients of the document, along with their capacities; (4) the document's subject matter; (5) the purpose for the production of the document; and (6) a specific explanation of why the document is privileged or immune from discovery. It is expected that the Magistrate Judge will conduct an in-camera inspection of any documents produced for inspection and make particularized rulings with respect to the application of the privilege.

(Rec. Doc. 132, p. 9).

One day before the foregoing production was due, Plaintiff filed her Second Motion to Compel, challenging Defendant's purported practice of producing partial documents with non-privileged redactions. The Second Motion also challenges Defendant's responses to Request of Admission No. 6 and Interrogatories No. 10 and 12 (propounded on May 14 and 23, 2025). Since then, in accordance with the Court's instruction, Defendant provided several privilege logs and thousands of pages of documents to the Court for in-camera review.[1] Plaintiff's Third Motion challenges certain withheld documents.

The parties appeared for a lengthy hearing on these discovery issues on December 18, 2025. Having reviewed the parties' voluminous pleadings, five (5)

---

[1]    The bulk of the documents (approximately 7,600 pages) were from the Louisiana Attorney General. As discussed below, the AG has since significantly reduced the number of documents subject to court review to less than 1,000 pages.

different privilege logs, and over 1,200 pages of documents, the Court provides this comprehensive ruling to address current disputes and to guide the parties in resolving ongoing issues without further burdening the Court with resource-intensive discovery issues.

## I.    Second Motion to Compel: Responses to Req. for Adm. No. 6 and Interrogatories No. 10 and 12

### A. Req. for Admission No. 6

Req. No. 6 asks Defendant to admit that the District Attorney for the 16th Judicial District Attorney's Office has final decision-making authority with regard to the use of, decision to seek, application for, or issuance of Material Witness Warrants in cases prosecuted by the 16th Judicial District Attorney's Office. (136-10, p. 9). Defendant's response consists of boilerplate general objections and otherwise provides no response on the grounds that the request is a compound question. Objections to written discovery must be specific and with stated reasons. F.R.C.P. Rule 33(b)(4); Rule 34(b)(2)(B). Boilerplate objections are unacceptable. *Enron Corp. Sav. Plan v. Hewitt Assocs., L.L.C.,* 258 F.R.D. 149, 159 (S.D. Tex. 2009); see also *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,* 894 F.2d 1482, 1485 (5th Cir.1990). Likewise, objections based on the compound nature of a request are inappropriate where the requests are capable of separation upon answering. *VeroBlue Farms USA Inc. v. Wulf*, 345 F.R.D. 406, 426 (N.D. Tex. 2021); *People's*

*Capital & Leasing Corp., v. McClung*, 5:17-CV-484-OLG, 2017 WL 8181529, at *2 (W.D. Tex. Sept. 22, 2017)).

Defendant did not object on the grounds that the request calls for a legal conclusion. Whether an official has final decision-making authority is a legal determination for the judge. *Gros v. City of Grand Prairie, Tex.,* 181 F.3d 613, 617 (5th Cir. 1999), citing *Jett v. Dallas Independent School District,* 491 U.S. 701, 109 S.Ct. 2702 (1989). Rule 36(a)(1) limits the scope of requests for admission to facts, application of law to fact, or opinions about either. See discussion in *Thompson v. Beasley*, 309 F.R.D. 236, 241 (N.D. Miss. 2015), quoting *Benson Tower Condo. Owners Ass'n v. Victaulic Co.,* 105 F.Supp.3d 1184, 2015 WL 2208444, at *4 (D.Or. May 11, 2015) ("While the rule allows a party to request an admission of "the application of law to fact," "[r]equests for purely legal conclusions ... are generally not permitted.")

Request No. 6 seeks a legal conclusion and requires no further answer, especially considering that Defendant apparently responded to Interrogatory No. 11 and identified himself as the final policy making authority for the 16th Judicial District. Plaintiff's motion to compel a further response to Request No. 6 is denied.

**B. Interrogatory No. 10**

Int. No. 10 asks Defendant to describe Bo Duhé's role in overseeing the use of, decision to seek, application for, or issuance of Material Witness Warrants in the

16th Judicial District, including in the JohnLewis Trial and the Layne Trial. (Rec. Doc. 136-8). Disregarding Defendant's previously rejected objections based on relevance, objections based on privilege (further discussed below), and other issues addressed in the Court's prior ruling, Defendant's substantive response is: "[I]t is averred that experienced felony prosecutors were assigned to handle felony prosecutions. The prosecutor in charge of handling the case had the discretion to prepare for and present the case, including any motions. District Attorney Duhe was available to consult should the prosecutor solicit his advice." (Rec. Doc. 136-8, p. 8). Notwithstanding improper objections previously addressed, the Court finds this properly responds to the interrogatory but that specific details should be provided relative to DA Duhe's role via securing material witnesses.

## C. Interrogatory No. 12

Int. No. 12 asks Defendant to identify all members of his office and their communications (including dates, times, and method of communication) with certain individuals ("Identified Persons"). (Rec. Doc. 136-9). Beyond the litany of objections, Defendant responded with reference to certain produced documents which appear to document communications. (p. 8-9). Plaintiff contends the response omits many communications over the relevant time period. Defendant agreed to supplement this response.

## II.   Third Motion to Compel: Privilege Logs and In-camera Review of Withheld Documents

Plaintiff challenges Defendant's and the Attorney General's privilege logs as incomplete, improperly redacted, and otherwise insufficient for withholding non-privileged documents. Defendant provided approximately 337 pages of documents, and the AG provided approximately 920 pages to the Court for in-camera inspection.

### A. Defendant's and AG's Privilege Logs

F.R.C.P. Rule 26(b)(5) provides that when a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

Defendant has provided four privilege logs: Defendant's Fourth Amended Privilege Log (Nov. 14, 2025) (Rec. Doc. 149-1); Supplemental Privilege Log (Nov. 18, 2025) (Rec. Doc. 149-2); and Second Supplemental Privilege Log (Nov. 25, 2025) (Rec. Doc. 149-3); and, on the night of December 17, 2025 (twelve hours before the December 18 hearing), Defendant provided a Third Supplemental

Privilege Log by email to the Court.[2] The Court finds Defendant's privilege logs comply with Rule 26(b)(5). In response to Plaintiff's specific challenges, the Court has reviewed the approximately 337 documents Defendant submitted for review, which documents primarily include file notes, emails, and text messages.

Plaintiff served a subpoena duces tecum on the AG in July 2025. On November 26, 2025, either Defendant or the AG provided a 377-page privilege log.[3] (Rec. Doc. 149-4). Initially, according to Plaintiff, the AG produced only 74 pages, withholding over 7,600 documents, referenced in its initial log. In response to Plaintiff's detailed objections, counsel for AG agreed that its log was overly broad and that it improperly withheld non-privileged documents. (Rec. Doc. 155).[4] On December 15, 2025, the AG provided two thirteen-page privilege logs and produced a significant number of documents to Plaintiff. The AG withheld approximately 920 pages of documents, which the Court has reviewed. The Court finds that the AG's revised privilege logs comply with Rule 26(b)(5); however, as discussed below, the

---

[2]     Due to its late receipt, the Third Supplemental Privilege Log is not in the record.

[3]     At the December 18 hearing, counsel explained that the 377-privilege log was Defense counsel's modification of an original privilege log from the AG. The circumstances surrounding the improper privilege log remain unclear to the Court.

[4]     AG counsel later explained that initial log was computer generated and otherwise the product of sloppy work. Rec. Doc. 167. AG counsel also later clarified by email that the volume of documents was due to substantial duplicates, which were removed from the supplemental production and revised logs.

Court agrees with Plaintiff that the initial 377-page privilege log warrants recompense for Plaintiff's counsel's time.

## B. Waiver of Privileges

Plaintiff urges the Court to find that Defendant and the AG waived their privileges, prompting full disclosure of all documents. "Continual failure to adhere to Rule 26's prescription may result in waiver of the privilege where a court finds that the failure results from unjustified delay, inexcusable conduct, or bad faith." *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.,* 876 F.3d 690, 697 (5th Cir. 2017). The Court does not find that Defendant or the AG are guilty of unjustified delay, inexcusable conduct, or bad faith sufficient to warrant a waiver of their asserted privileges. Contrarily, the Court finds that Defendant had a good faith basis for the privileges asserted on all documents. Although the AG's initial 377-page privilege log warrants some sanction (further discussed below), the Court declines to impose the harsh penalty of waiver. Counsel for AG readily admitted that the initial log, which was computer generated, was improper, apologized for what he described as sloppy work, and corrected the deficiencies prior to the Court's review.

## C. Privileges Asserted

"A party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Int'l Corp.,* 272 F.3d 705, 710 (5th

Cir. 2001). Defendant and the AG assert several privileges in support of their positions withholding the reviewed documents.

### 1. Federal Law Enforcement

The Fifth Circuit recognizes a law enforcement privilege which protects, in addition to information pertaining to confidential informants, information pertaining to ongoing criminal investigations. The Fifth Circuit instructed:

> The oft-cited *Frankenhauser* test consists of weighing the following ten factors: (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case. ...

> Additionally, the law enforcement privilege is bounded by relevance and time constraints. ... Several types of information probably would not be protected, including documents pertaining to: (1) people who have been investigated in the past but are no longer under investigation, (2) people who merely are suspected of a violation without being part of an ongoing criminal investigation, and (3) people who may have violated only civil provisions. Furthermore, the privilege lapses after a reasonable period of time. Therefore, the privilege lapses either at the close of an investigation or at a reasonable time thereafter based on a particularized assessment of the document.

*In re U.S. Dep't of Homeland Sec.,* 459 F.3d 565, 570–71 (5th Cir. 2006) (citations omitted).

Regarding Defendant's prior invocation of the federal law enforcement privilege, this Court stated:

> Defendant submits that the JohnLewis criminal proceedings remain pending in the appellate court and that the Layne trial is set for September 29, 2025. Although these state criminal proceedings remain pending (and thus are arguably protected by the state public records privilege), the question for purposes of the federal law enforcement privilege is whether a criminal *investigation* is pending. Defendant states that the court "recognizes a 'law enforcement privilege' where there is an ongoing investigation or ongoing prosecution." (Rec. Doc. 81-2, p. 9, citing *In Re U.S. Dept. of Homeland Security, supra*, *Brown v. Thompson*, 430 F.2d 1214, 1215 (5th Cir. 1970), and *Coughlin v. Lee*, 946 F.2d 1152, 1160 (5th Cir. 1991)). Contrary to Defendant's assertion, none of the cited cases concerns documents pertaining to ongoing *prosecutions*—only investigations.

> In applying the *Frankenhauser* factors, the Court finds that the documents pertaining to the JohnLewis and Layne trials are discoverable, subject to the protective order already in place. Those cases are well beyond the investigation stage, with trial having already occurred or scheduled to occur in less than two months. Defendant did not present any argument addressing any particular factor and has not shown how disclosure of documents to Plaintiff (subject to previously stipulated confidentiality provisions) would discourage citizens from providing information, place any confidential informant at risk, or otherwise compromise the criminal process.

> The Court finds that the information requested from non-parties and in Plaintiff's discovery is not subject to the law enforcement privilege on the showing made. To the extent requested information pertains to any criminal matter that is currently under *investigation*, the parties may seek the Court's guidance if necessary after reasonable efforts to resolve. The Court emphasizes Counsel shall consider the

terms and effectiveness of their mutually established Protective Order (Rec. Doc. 77) prior to seeking Court guidance.

(Rec. Doc. 101, p. 11-12; affirmed at Rec. Doc. 132).

Since the foregoing ruling, Defendant nonetheless withheld documents pertaining to the *John Lewis* and *Layne* criminal trials and other closed criminal matters.[5] Additionally, Defendant has provided no argument addressing the *Frankenhauser* factors to justify withholding. Hence, none of the withheld documents are protected by the law enforcement privilege, but that is not to say the documents are automatically subject to production, as Plaintiff urges. Defendant and the AG assert other privileges in support of withholding each document.

### 2. *Attorney Client and Joint Defense/Common Interest*

The Fifth Circuit summarized the law applicable to claims of attorney-client privilege as follows:

> The attorney-client privilege limits the normally broad disclosure requirements of Federal Rule of Civil Procedure 26. For a communication to be protected under the privilege, the proponent must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding. Determining the applicability of the privilege is a "highly fact-specific" inquiry, and the party asserting the privilege bears the burden of proof. Once the privilege has been established, the burden shifts to the other party to prove any applicable exceptions. Ambiguities as to whether the

---

[5]    A representative from the 16th Judicial District Attorney's office confirmed at the December 18, 2025 hearing that all other criminal matters identified on discovery documents are closed.

elements of a privilege claim have been met are construed against the
proponent.

*Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.,* 876 F.3d 690, 695 (5th

Cir. 2017) (cleaned up).

The AG withheld certain documents based on a common interest and/or joint
defense privilege. The Fifth Circuit recognizes a "common legal interest privilege"
(also known as a joint defense privilege) as an extension of the attorney-client
privilege, which protects communications made among persons "who consult an
attorney together as a group with common interests seeking common
representation." *In re Santa Fe Int'l Corp.,* 272 F.3d 705, 711 (5th Cir. 2001), citing
*In re Auclair,* 961 F.2d 65, 69 (5th Cir.1992). "[T]he two types of communications
protected under the CLI privilege are: (1) communications between co-defendants
in actual litigation and their counsel; and (2) communications between *potential* co-
defendants and their counsel." *Id.* at 710. Regarding communications between
*potential* co-defendants, the privilege applies only if there appears "a palpable threat
of litigation at the time of the communication, rather than a mere awareness that
one's questionable conduct might some day result in litigation, before
communications between one possible future co-defendant and another…could
qualify for protection." *Id.* at 711. "[B]ecause the privilege is 'an obstacle to
truthseeking,' it must 'be construed narrowly to effectuate necessary consultation

between legal advisers and clients.'" *Id*., at 710, quoting *In re LTV Sec. Litig.,* 89 F.R.D. 595, 606 (N.D.Tex.1981).

*Adair v. EQT Prod. Co*., No. 1:10CV00037, 2012 WL 4458231, at *4 (W.D. Va. June 28, 2012) is a factually similar case in which the court found a common interest privilege did not protect communications between defense counsel and counsel for the attorney general, which had intervened solely for defending the constitutionality of the challenged act. The court reasoned that the communications withheld did not concern constitutionality and did not involve the attorneys enrolled in the case. *Id*. Contrarily, in this case, the AG's documents withheld on the common interest privilege (AG5741.2[6] and 5747.1) concern counsels' litigation strategy in this case and are clearly protected opinion work product (further discussed below).

### 3. *Work Product*

Rule 26 (b)(3)(A) provides the framework for application of the work-product doctrine:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:

(i)     they are otherwise discoverable under Rule 26(b)(1); and

---

[6]     The bates number for this document is 5747.2, but is mislabeled as 5741.2 on the log

(ii)    the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

"The burden of establishing that a document is work product is on the party who asserts the claim, but the burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production." *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of the Treasury, I.R.S.,* 768 F.2d 719, 721 (5th Cir. 1985). Thus, Plaintiff bears the burden of showing Defendant's withheld documents should be disclosed.

Plaintiff first urges the Court to classify the DA's case files as business records kept in the ordinary business of prosecuting crimes. Although business records are typically exempt from work product protection (*United States v. El Paso Co.,* 682 F.2d 530, 542 (5th Cir.1982)), the Court is mindful that the documents sought were the product of criminal proceedings and should be afforded special consideration. Otherwise, essentially all criminal documents could potentially be discoverable. The business records exemption does not resolve the issues here.

Plaintiff next argues that the work product doctrine does not protect documents prepared in anticipation of *other* litigation. The Fifth Circuit has held otherwise, holding that documents prepared in anticipation of at least related litigation (and at most, *any* litigation) is protectable. *In re Grand Jury Proc.,* 43 F.3d 966, 971 (5th Cir. 1994). However, courts have held "that the privilege is unavailable

when a prosecutor in a prior criminal investigation later objects to discovery of her work product by a litigant in a related civil lawsuit." *Klein v. Jefferson Par. Sch. Bd.,* No. CIV.A. 00-3401, 2003 WL 1873909, at *3 (E.D. La. Apr. 10, 2003), citing cases. See also *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 143–44 (D. Mass. 2014), citing cases.

In *Klein*, the Eastern District held that the work product privilege did not apply to a prosecutor's notes in a prior, closed criminal proceeding when sought in subsequent related civil litigation. The Court reasoned:

> [T]he underlying criminal case here has been closed, thus, there are no concerns with interfering with an ongoing criminal investigation. *See Ostrowski,* 2002 WL 31956039, at *4; *Hernandez,* 1997 WL 754041, at *2 (finding because the underlying criminal case has been closed there are no concerns with jeopardizing an ongoing criminal investigation); *see also Carter,* 2000 WL 632988, at *2. Moreover, even though it is true that the defendants may seek to establish their innocence as a defense to the present civil rights charges, it does not follow that all documents created by the JPDA in the criminal proceeding and the decision not to prosecute the defendants remain protected by the work product privilege. *See id.* (citing *Barnes v. Borough of Pottstown,* 1994 WL 114359, at *3 (E.D.Pa.1994)).
>
> Thus, the work product privilege is inapplicable in the instant case. This conclusion is supported by a consideration of the policies which underlie the doctrine. Though the general rule against a nonparty asserting the privilege is certainly susceptible to the discomforting situation of a "less diligent attorney raiding the file of a previously diligent attorney," this danger is not present "where the prior case was criminal and the subsequent civil." *Schultz v. Talley,* 152 F.R.D. 181, 185 (W.D.Mo.1993) (citing *Doubleday,* 149 F.R.D. at 607).

*Id.*, at *3–4.

Although the district attorney's office was not a party to the civil suit in *Klein*, the court's reasoning is instructive in this case. Plaintiff does not seek disclosure for any reason relevant to the underlying criminal prosecutions (which have, or will soon be resolved), and such disclosure in this case does not undermine the criminal process or the policy underlying the privilege. Indeed, "[t]he work product privilege…does not exist to protect a confidential relationship but to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of an opponent." *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir. 1989).

Finally, in applying Rule 26(b)(3), the Court is careful to distinguish between ordinary work product and opinion work product (an attorney's mental impressions, conclusions, and opinions). Ordinary work product is subject to disclosure upon a showing of substantial need and the inability to obtain the material without undue hardship. *Hunkin v. Cooper/T. Smith Stevedoring Co.,* No. CIVA 08-456, 2010 WL 93856, at *2 (W.D. La. Jan. 7, 2010); *Thomas v. Gen. Motors Corp.,* 174 F.R.D. 386, 388 (E.D. Tex. 1997). See also *Goldberg v. United States*, 425 U.S. 94, 102-106, 96 S. Ct. 1338, 1344 (1976), finding that a government lawyer's written notes following oral statements in a criminal proceeding were not work product.

Opinion work product is afforded *almost* absolute protection.

"Opinion" work product, that which conveys the "mental impressions, conclusions, opinions, or legal theories of an attorney or

other representative," has been accorded almost absolute protection from discovery by some courts. *See Thomas,* 174 F.R.D. at 388; *Sporck,* 759 F.2d at 316; *In Re International Systems,* 693 F.2d 1235, 1240 (5th Cir.1982). Nevertheless, opinion work product becomes subject to disclosure when (1) "mental impressions are at issue in a case and the need for the material is compelling." *Holmgren v. State Farm Mutual Auto. Ins. Co.,* 976 F.2d 573, 577 (9th Cir.1992); *Biggers v. State Farm Insurance Co.,* 1993 WL 408375 (E.D.La.1993); *Bird v. Penn Central Co.,* 61 F.R.D. 43 (E.D.Pa.1973).

*Conoco Inc. v. Boh Bros. Const. Co.,* 191 F.R.D. 107, 118 (W.D. La. 1998).

See also *Ramirez v. Abreo*, No. 5:09-CV-189-C, 2010 WL 11470102, at *5 (N.D. Tex. Nov. 24, 2010), in which the plaintiff alleged prosecutors used unconstitutional methods and the court ordered production of the prosecutors' underlying criminal files, including opinion work product.[7] Similarly, in this case, the Court agrees that opinion work product regarding the procurement and procedural treatment of material witnesses in underlying criminal cases is *at issue* and that Plaintiff has shown a compelling need for disclosure of such information. In order to prove her *Monell* claim, Plaintiff must show that she suffered a constitutional violation as a result of Defendant's use of the material witness statute to detain her in the *JohnLewis* and *Layne* trials and that Defendant had a custom or policy of improper use, application, etc. of the material witness statute in other cases. Communications among attorneys responsible for material witness proceedings are

---

[7]    *Ramirez* is also similar to this case for its "continued morass of discovery battles." *Id.* at *1.

essential to Plaintiff's *Monell* claim and would not be available from any other source.

Nevertheless, the Court is sensitive to Defendant's position that disclosure of work product in the *Layne* proceedings (and the related *JohnLewis* proceedings) could potentially affect the prosecution, with trial set for April 2026. Further, the Court is not inclined to apply a blanket order for disclosure as *Klein* authorizes, because the underlying criminal cases are not factually related to the instant civil case. (In *Klein*, the criminal case and subsequent civil case arose from the same incident. *Klein*, *supra*.) Balancing Plaintiff's need for the material, the District Attorney's need to protect its work product (especially in the *Layne* proceedings), and the parties' mutually agreed upon protective order, the Court will order production of 1) all ordinary work product in closed criminal cases; 2) opinion work product regarding material witness procedure and procurement in closed criminal cases; 3) ordinary and opinion work product regarding Plaintiff and other material witnesses in the *JohnLewis* and *Layne* trials. Because both the *JohnLewis* and *Layne* cases involve the same murder, and prosecutors have not yet tried *Layne*, the Court will not order production of work product unrelated to material witness procedure and procurement. For instance, the Court will not order production of information pertaining to a material witness's statement or testimony in a trial unrelated to his procurement as such.

#### *4. Deliberative Process and Executive Privilege*

Defendant broadly relies on an executive/deliberative process privilege to withhold communications between assistant district attorneys and the Louisiana Attorney General's office.

The Supreme Court explained the deliberative process privilege as follows:

> The deliberative process privilege is a form of executive privilege. To protect agencies from being "forced to operate in a fishbowl," the deliberative process privilege shields from disclosure documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated. The privilege is rooted in the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news. To encourage candor, which improves agency decisionmaking, the privilege blunts the chilling effect that accompanies the prospect of disclosure.

*United States Fish & Wildlife Serv. v. Sierra Club, Inc.,* 592 U.S. 261, 267–69, 141 S. Ct. 777, 785–86, (2021) (cleaned up).

In discussing the related legislative privilege, the Fifth Circuit recognized that executive privileges can, in certain cases, be waived:

> [The] legislative privilege as to certain documents is waived when the Legislator *publicly* reveals those documents. But that is not what happened here. The privilege log shows that the legislators did not send privileged documents to third parties *outside* the legislative process; instead they brought third parties *into* the process. That decision did not waive the privilege. The very fact that Plaintiffs need discovery to access these documents shows that they have not been shared publicly. On the other hand, if the legislators had shared the documents publicly, then they could not rely on the privilege to prevent Plaintiffs from introducing those documents as evidence. But here,

> where the documents have been shared with some third parties—but
> haven't been shared publicly—the waiver argument fails.

*La Union Del Pueblo Entero v. Abbott*, 68 F.4th 228, 236–37 (5th Cir. 2023) (cleaned up; emphasis in original).

The legislative privilege, however, arguably extends further than the ordinary deliberative process privilege. See detailed discussion in *League of United Latin Am. Citizens v. Abbott*, 708 F. Supp. 3d 870, 878 (W.D. Tex. 2023), *appeal dismissed*, No. 24-50128, 2025 WL 1467462 (5th Cir. May 22, 2025). Thus, disclosure to a third party could arguably waive a general deliberative process privilege, but not a legislative privilege. The task, then, is to determine which privilege applies—a task complicated by Defendant's failure to offer any meaningful argument.

The Louisiana Attorney General and its District Attorneys are in the judicial branch. *State v. Lee*, 2022-01827 (La. 9/1/23), 370 So. 3d 408, 412, *reh'g denied*, 2022-01827 (La. 10/19/23), 412 So. 3d 960, citing La. Const. art. V, § 26; La. C.Cr.P. art. 61. To the extent any executive privilege would apply, Defendant would seemingly rely on a judicial deliberative process privilege, which protects judicial mental processes in official adjudicative duties. See discussion in *Cain v. City of New Orleans*, No. CV 15-4479, 2016 WL 7156071, at *3 (E.D. La. Dec. 8, 2016). But Defendant's withheld documents do not pertain to any adjudicative duties. Further, neither the AG nor Defendant has standing to assert a legislative privilege. See discussion in *Arnold v. Barbers Hill Indep. Sch. Dist.*, 157 F.4th 749, 756 (5th

Cir. 2025). Thus, Defendant's position is best interpreted as asserting a general deliberative process privilege, which may arguably be waived by communication to an outsider. See *Gilby v. Hughs*, 471 F. Supp. 3d 763, 767 (W.D. Tex. 2020) (Because "[d]eliberative-process privilege protects candid discussions within the executive branch needed for optimum administrative decision making," the privilege does not protect "communications where the agency is not the decision maker and the separation of powers veil has been pierced.").

Even in the absence of waiver, the deliberative process privilege does not automatically warrant withholding documents:

> The deliberative process privilege is a qualified one. Thus, courts have found that a litigant may obtain such deliberative materials if his or her need for accurate fact finding override the government's interest in nondisclosure. Courts have identified various factors which are relevant to a determination of whether or not production is proper despite the existence of the deliberative process privilege. These factors include: (1) the importance of the documents to the defense and their relevance; (2) the availability of information on the same issue from a different source; (3) the importance of the litigation and the issues involved; (4) the government's role, if any, in the litigation; and (5) the potential chilling of governmental employees' expression of candid opinion.

*Klein*, 2003 WL 1873909, at *4 (citations omitted).

Defendant withheld emails among the executive director of the Louisiana District Attorneys Association (LDAA) and certain district attorney members. According to its website, LDAA is a non-profit organization, which Defendant states is comprised of elected Louisiana District Attorneys. The withheld email chains

begin with a request from the Louisiana Legislative Auditor to the LDAA to provide a response to a draft report on domestic violence. The LDAA then requests its members' input, two of whom (unrelated to this suit) respond with an opinion about the perception of material witness warrants in domestic abuse cases. (DA Supp. 1072-73; 1343-44). Assuming without deciding that no waiver occurred, applying the *Klein* factors, the Court finds these emails have little, if any relevance, other than to show unrelated district attorneys' opinions on the use of material witness warrants in the context of domestic abuse cases. These emails need not be produced.

Defendant also withheld a September 16, 2023 email from Claire Howington, which copies DA Duhe, to LDAA advising of Plaintiff's material witness situation in this case (DA Supp. 1414) and a June 2021 email chain among DA Duhe and LDAA regarding a draft response to a reporter's story regarding L.R.S. 15:625 (pertaining to material witness data reporting). (DA Supp. 1598-99). The Court finds the deliberative process privilege does not protect these emails, which are not "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." These emails are simply informal discussion among LDAA and district attorneys regarding the existence of Plaintiff's situation and a reporter's story on a material witness data reporting statute. See also *League of United Latin Am. Citizens v. Abbott*, 708 F. Supp. 3d 870, 1237 (W.D. Tex. 2023), *appeal dismissed*, No. 24-

50128, 2025 WL 1467462 (5th Cir. May 22, 2025), citing *Waters v. U.S. Capitol Police Bd.*, 218 F.R.D. 323, 324 (D.D.C. 2003) (opining that the deliberative process privilege should not "thwart discovery of information in a case in which a plaintiff challenges governmental action as discriminatory").

### 5. Grand Jury

The "General Rule of Secrecy" set forth in Federal Rule of Criminal Procedure 6(e) provides that certain person, including attorneys for the Government, "shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules." *United States v. John Doe, Inc. I*, 481 U.S. 102, 107, 107 S. Ct. 1656, 1659–60 (1987). "Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 222 99 S.Ct. 1667, 1674 (1979).

Having reviewed the documents, the Court will not order disclosure of documents identifying any grand juror. Otherwise, limited notes only vaguely referencing grand jury proceedings without details protected by the grand jury proceedings and shall be produced.

III.    **Summary**

Considering the foregoing privileges, and having reviewed all documents submitted for inspection, the Court orders the following documents to be produced, subject to the protective order in place (Rec. Doc. 77) and redacted of all personal identifiers (birthdates, social security numbers, addresses, and phone numbers), except that documents shall not be redacted of any material witness's contact information (address, phone number, and email address):

- Documents on 4th Amended Privilege Log: Log ID No. 2; 3; 4; 6; 7; 8; 9; 15; 16; 17; 20; 21; 29; 30; 31; 32; 33; 34; 35[8]; 37; 38; 39; 40; 41; 50; 52; 55; 60.

- Defendant's Supplemental Privilege Log: Log ID No. 1; 2; 3; 4; 5; 6; 7; 10; 11; 12; 13; 14; 15; 16; 17; 18; 19[9]; 20; 21; 22; 23; 24; 25; 26; 27; 28.

- Defendant's Second Supplemental Privilege Log: Log ID No. 1; 2; 3; 4.

- Defendant's Third Supplemental Privilege Log: Log ID No. 3; 4; 5; 6; 7; 8; 9; 10; 11; 12; 13; 14; 15; 16; 17; 19; 20; 21; 22.

- AG's First Privilege Log: DOJ Doc. No. 1334.1; 1334.2; 3186.1-.16; 3186.17-.21;  4424.1[10];  7001.1;  7001.2-.3;  7002.1-.3;  7004.1-.4; 7007.1-.2;  7008.1-.2;  7011.1-.4;  7012.1-.4;  7021.1-.2;  7022.1-.5;

---

[8]    Counsel may redact the underlined portion as unrelated opinion work product.

[9]    DA Supp. 002801 was not included with the documents for Court review; however, because the description indicates opinion work product related to material witness status, it should be produced.

[10]    The bates number for this document is 4524.1, but is mislabeled as 4424.1 on the log.

7029.1; 7077.1; 7080.1-7083.4; 7092.1-7133.2; 7235.1; 7302.1-.2; 7327.1-.2; 7328.1; 7329.1; 7331.1-.2; 7342.1-.2; 7357.1; 7374.1-7406.3.

- AG's Second Privilege Log: DOJ Doc. No. 8000.1-.8; 8001.1-.3; 8002.1-.17; 8003.1-.44; 8004.1-.11; 8005.1-.25; 8007.1-.25; 8008.1-.143; 8009.1-.12; 8010.1-.26; 8011.1-.3; 8012.1-.3; 8013.1-.12; 8015.1-.3; 8016; 8026; 8027; 8028; 8029; 8032.1-.43; 8033.1-.4; 8035; 8036; 8037.1-.7; 8038.1-.2; 8039.1-.8; 8041; 8042; 8043; 8044; 8045; 8047; 8048.1-.2; 8049.1-.14; 8050; 8051.1-.14; 8052.1-.14; 8053; 8054.1-.8[11]

All witness interviews and statements from *JohnLewis* or *Layne* proceedings ordered to be produced may be redacted of 1) any statement or testimony which does not reference or directly relate to Plaintiff or any other material witness's procurement as such; 2) attorney handwritten notes which do not reference or directly relate to Plaintiff or any other material witness's procurement as such; 3) any grand jury testimony. Any statement, testimony (other than grand jury), or notes directly referencing Plaintiff for any purpose shall be produced.

## IV.   **Plaintiff's Request for Costs and Attorney's Fees**

Under Rule 37(a)(5), the Court may award costs and attorney's fees to the prevailing party on a motion to compel unless the opposing party's nondisclosure, response or objection was substantially justified or other circumstances make an

---

[11]    The AG identified DOJ No. 8057 as "New Iberia Police Dept. – Trevonce Bernard – Case File submittal," but did not provide same for the Court's review. The Court is confident counsel for Defendant and the AG can determine whether the document should be produced based on this ruling. If necessary, the AG may provide No. 8057 for review.

award of expenses unjust. F.R.C.P. Rule 37(a)(5)(A) and (B). If the motion is granted in part and denied in part, the court may apportion the reasonable expenses for the motion. (Rule 37(a)(5)(A) and (B).

The Court finds that both parties were justified in their positions, leading to a partial grant/denial of the motions. However, the Court finds that an award of attorneys' fees is warranted for the AG's initial 377-page privilege log. Defense and the AG's counsel explained at the hearing that the AG provided an initial, computer-generated log to Defense counsel, and Defense counsel expanded the log to provide details regarding privileges asserted, resulting in the 377-page document. Plaintiff's counsel spent considerable time and resources reviewing and challenging the improper log via the Third Motion to Compel, before the AG admitted the log was overly broad and improperly withheld documents. (Rec. Doc. 155). Accordingly, the Court finds that Plaintiff's counsel should be compensated for the unnecessary time spent reviewing the initial AG log. Plaintiff shall submit an affidavit identifying counsel's time spent reviewing the improper log.

Signed at Lafayette, Louisiana on this 30th day of December, 2025.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE